IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:24-CT-3200-FL

| | | |
|---|---|---|
| QUINN CUMBERLANDER,<br><br>Plaintiff,<br><br>v.<br><br>TRAVIS PHILBECK, JORDAN EVAN, MATTHEW GAILIRAD, DAVID MOORING INSTITUTIONAL MEDICAL SERVICES, PLLC,<br><br>Defendants. | ) | ORDER |

This matter is before the court upon defendant Institutional Medical Services, PLLC's, motion for summary judgment (DE 41), defendants Travis Philbeck ("Philbeck"), Jordan Evan ("Evan"), Matthew Gaillirad ("Gaillirad"), David Mooring's ("Mooring") (collectively, "the officer defendants") motion for summary judgment (DE 44), and plaintiff's motion to strike (DE 59). The motions have been briefed fully, and, in this posture, the issues raised are ripe for ruling. For the following reasons, defendants' motions are granted and plaintiff's motion to strike is terminated as moot.

**STATEMENT OF THE CASE**

Plaintiff, a former pretrial detainee proceeding pro se, commenced this action by filing complaint August 20, 2024, alleging claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Pursuant to the operative amended complaint, filed December 17, 2024, plaintiff alleges defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution premised upon allegedly inadequate medical care by defendants identified above.

Defendant Institutional Medical Services moves for judgment in its favor on all claims. In support of its motion, defendant Institutional Medical Services relies on plaintiff's medical records and the sworn testimony of John H. Piland ("Piland"), its chief medical officer. The officer defendants also move for judgment in their favor on all claims, also relying on plaintiff's medical records in addition to the sworn testimony of Kelsey Drischler ("Drischler"), a corrections officer, defendant Mooring, defendant Evans, and a memorandum written by Drischler.

In opposition to defendants' motions, plaintiff relies on his sworn testimony, medical records, and documents showing the officer defendants' contact information. In his motion to strike, plaintiff seeks to strike portions of Piland's testimony, arguing that Piland's testimony is factually inaccurate, is not based on personal knowledge, and improperly argues legal conclusions.

**STATEMENT OF FACTS**

Except as otherwise noted below, the court recounts the facts in the light most favorable to plaintiff. Plaintiff was a pretrial detainee "housed at the Nash County Detention Center beginning on or about October 26, 2022." (IMS SMF (DE 42) ¶ 1). Defendant Institutional Medical Services is a private medical care provider that services inmates at Nash County Detention Center. (Id. ¶¶ 2-3). Defendants Evans, Mooring, Gaillirad, and Philbeck were deputies with the Nash County Sherriff's Department during the time period relevant to this case. (Evans Decl. (DE 47-3) ¶¶ 1-2; Moore Decl. (DE 47-2) ¶¶ 1-2; DE 58-2 at 2).

On December 2, 2022, Drischler, a corporal at the Nash County Correction Center, was conducting meal duty, which involves serving inmates trays of food off a cart. (Officer Defs' SMF (DE 46) ¶¶ 1-3). During meal duty, Drischler struck plaintiff's "right foot with the food cart," and plaintiff immediately "felt severe pain." (Cumberlander Decl. (DE 58-1) ¶ 4). Plaintiff's "toe changed color and turned purple[,]" and "it became hard for [plaintiff] to stand and walk

normally." (Id. ¶¶ 7-8). Drischler and another correctional officer stated "there was no nurse or other medical staff on duty." (Id. ¶¶ 9).

Plaintiff then told the responding sheriff's deputies, including the officer defendants, "that I needed an ambulance, hospital treatment, and x-rays." (Id. ¶ 11). However, the deputies did not call emergency medical services or take plaintiff to the hospital. (Id. ¶¶ 18-19).

The next day, December 3, 2022, a nurse examined plaintiff's foot. (IMS SMF (DE 42) ¶ 5). Defendant Institutional Medical Services employees then conducted an x-tray of plaintiff's foot December 8, 2022, and [t]he x-ray revealed a healing fracture of the base of the proximal phalanx of the first toe." (Id. ¶ 7). A nurse reviewed plaintiff's x-ray results December 9, 2022. (Id. ¶ 9). On December 13, 2022, medical staff saw plaintiff again and discussed the results of his x-ray. (Id. at ¶ 10). Plaintiff was then extradited from the Nash County Detention Center December 13, 2022, to Massachusetts. (Id. ¶ 11).

**DISCUSSION**

A. Motion for Summary Judgement

1. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must

then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586– 87 (1986).[1]

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant' s] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable

[1] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

2. Analysis

a. Defendant Institutional Medical Services

Defendant Institutional Medical Services argues plaintiff's constitutional rights were not violated, and even if they were, there is no basis to impute liability onto defendant IMS. The court agrees there is no basis to hold defendant Institutional Medical Services liable and therefore does not analyze whether its employees violated plaintiff's rights.

"[A] private corporation is not liable under § 1983 for torts committed . . . when such liability is predicated solely upon a theory of respondeat superior." Austin v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th Cir. 1999). Accordingly, a private medical provider for inmates is not liable for any constitutional torts committed by employees through respondeat superior. See id.; Hardy v. Sutton, 247 F. App'x 411, 411 (4th Cir. 2007); Clark v. Maryland Dep't of Pub. Safety & Corr. Servs., 316 F. App'x 279, 282 (4th Cir. 2009).

"Rather, under [Monell v. Department of Soc. Servs., 436 U.S. 658 (1978)], and its progeny, a municipality [or private corporation] is subject to § 1983 liability only when it causes such a deprivation through an official policy or custom." Austin, 195 F.3d at 727 (emphasis removed). "The policy or custom may be expressed in one of several forms:(1) [T]hrough an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." Howard v. City of Durham, 68 F.4th 934, 952 (4th Cir. 2023).

Plaintiff states that his December 3, 2022, visit with defendant Institutional Medical Services's staff "was not meaningful treatment[,]" and that "he remained in severe pain." (Cumberlander Decl. (DE 58-1) ¶¶ 23-24). Plaintiff further disputes defendant Institutional Medical Services's claim that he received multiple visits between December 3, and December 13, 2022, and states he did not receive any adequate care before he departed Nash County Detention Center December 13, 2022. (Id. ¶¶ 24-32).

Defendant Institutional Medical Services is a private company providing medical care to prison inmates, and, as a result, may be liable only through Monell liability and not respondeat superior. See Austin, 195 F.3d at 727-28; Clark, 316 F. App'x at 282. The nurses and doctors who treated plaintiff are not parties to this case and any potential constitutional tort committed by them is not imputable to defendant Institutional Medical Services through respondeat superior. See id. Moreover, no facts in the record show defendant Institutional Medical Services engaged in a "policy or custom" that would support a finding of Monell liability. Austin, 195 F.3d at 727. Plaintiff's allegations address only one isolated incident of allegedly deficient care by defendant Institutional Medical Services's employees. (See Cumberlander Decl. (DE 58-1) ¶¶ 22-31). That is insufficient to create a triable issue of fact as to the claim against defendant Institutional Medical Services under the standard set forth above.

Accordingly, where there is no basis to hold defendant Institutional Medical Services liable for acts of its staff, it is entitled to judgment as a matter of law.

b. Excessive Force

Turning next to plaintiff's claim for excessive use of force, the officer defendants raise the affirmative defense of qualified immunity. The qualified immunity analysis proceeds in two steps, which the court "may address in whichever sequence will best facilitate the fair and efficient

disposition of the case." Pfaller v. Amonette, 55 F.4th 436, 444 (4th Cir. 2022). First, the plaintiff must show a violation of a constitutional right. Id.; Stanton v. Elliot, 25 F.4th 227, 233 (4th Cir. 2022). Second, defendants bear the burden of showing the right at issue was not "clearly established" at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 231 (2009); Stanton, 25 F.4th at 233. The court first determines whether plaintiff can establish a constitutional violation.

Because plaintiff was a pretrial detainee in state custody at the time of the use of force incident, his excessive force claim is governed by the Fourteenth Amendment and the "objective" standard set forth in Kingsley v. Hendrickson, 576 U.S. 389 (2015); see also, Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009). The court reviews the use of force from the perspective of a reasonable officer at the scene, "not with the 20/20 vision of hindsight," and must account for the officer's legitimate need to manage a correctional facility, including by preserving internal order and discipline and maintaining institutional security. Kingsley, 576 U.S. at 397. Several factors guide the court's evaluation, including: 1) the relationship between the need for a particular use of force and the amount of force used; 2) the extent of the detainee's injury; 3) the officers' efforts, if any, to temper or limit the amount of force; 4) the severity of the security problem presented by the detainee; 5) the threat reasonably perceived by the officer; and 6) whether the detainee was actively resisting the officer. Id.

On December 2, 2022, Drischler struck plaintiff's "right foot with the food cart," and plaintiff immediately "felt severe pain." (Cumberlander Decl. (DE 58-1) ¶ 4). Plaintiff's "toe changed color and turned purple[,]" and "it became hard for [plaintiff] to stand and walk normally." (Id. ¶¶ 7-8).

Drischler, however, is not a party to this case. While plaintiff moved to amend his complaint to include Drischler as a party after defendants moved for summary judgment, the court denied plaintiff's motion to amend July 8, 2026, where plaintiff moved to amend "nearly five months after the pleadings deadline, nearly three months after the information prompting the amendment was provided through discovery, and nearly two months after the dispositive motions deadline[.]" (DE 65 at 4-5).

The officer defendants did not use any force, touch, or detain plaintiff. (See Cumberlander Decl. (DE 58-1) ¶¶ 10-20). Where the officer defendants did not use any force against plaintiff, there is no genuine dispute of material fact that the officer defendants used excessive force against him.

Accordingly, the officer defendants are entitled to judgment as a matter of law on plaintiff's excessive force claim.

c. Deliberate Indifference

The Fourteenth Amendment's Due Process Clause governs a detainee's claim of deliberate indifference. Short v. Hartman, 87 F.4th 593, 611 (4th Cir. 2023). "To state a claim for deliberate indifference to a medical need, the specific type of deliberate indifference claim at issue in this case, a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed." Short v. Hartman, 87 F.4th 593, 611 (4th Cir. 2023). Mere negligence is insufficient to establish a claim under this standard. Id. at 611-12. Instead, the plaintiff must show "the defendant acted

or failed to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should have been known." Id. at 11; see also Farmer v. Brennan, 511 U.S. 825, 836 (1994).

After Drischler struck plaintiff's "right foot with the food cart," plaintiff immediately "felt severe pain." (Cumberlander Decl. (DE 58-1) ¶ 4). Plaintiff's "toe changed color and turned purple[,]" and "it became hard for [plaintiff] to stand and walk normally." (Id. ¶¶ 7-8). Plaintiff then told the responding sheriff's deputies, including defendants Mooring and Evans, that "that I needed an ambulance, hospital treatment, and x-rays." (Id. ¶ 11). However, the deputies did not call emergency medical services or take plaintiff to the hospital. (Id. ¶¶ 18-19).

Taking plaintiff's version of the facts as true and assuming he immediately requested medical treatment for his toe,[2] the officer defendants' failure to then immediately transport him to the hospital does not rise to the level of a Fourteenth Amendment violation. It is undisputed that plaintiff saw a medical provider the next day for his toe injury, (IMS SMF (DE 42) ¶ 5; Pl's Res. SMF (DE 57) ¶ 5), and "[m]ere delay is [] not enough" to establish a deliberate indifference claim. Moskos v. Hardee, 24 F.4th 289, 298 (4th Cir. 2022). "Rather, to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 297. "Medical care is often not immediate. Only the most fortunate are able to receive a doctor's appointment at the precise time they want it or medical attention at the very moment of arrival at a hospital." Id. at 297-98.

Here, taking plaintiff's account of events as true, the record does not show the officer defendants' failure to immediately call for an ambulance for plaintiff's toe injury "posed an unjustifiably high risk of harm" to plaintiff. Short, 87 F.4th at 611. The court acknowledges this toe injury caused plaintiff pain; however, "absent the unusual circumstances where the delay itself

[2] The officer defendants contend plaintiff did not complain of toe pain until the day after the incident. (Officer Defs' SMF (DE 46) ¶ 15).

places the prisoner at substantial risk of serious harm, such as where the prisoner's condition deteriorates markedly or the ailment is of an urgent nature[,]" there is no constitutional violation. Moskos, 24 F.4th at 298. The record does not show that plaintiff's toe injury, while painful, was an injury of such an "urgent nature" that the failure to immediately call for an ambulance posed a "substantial risk of serious harm" to plaintiff. Id. at 298.

Plaintiff cites to Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), where the United States Court of Appeals for the Fourth Circuit determined a delay in seeking treatment for a broken arm stated a claim for deliberate indifference. Id. at 1296. There, however, the court of appeals analyzed the series of events to determine whether there was "no set of facts in support of his claim which would entitle [the plaintiff] to relief" and determined the district court erred when dismissing the plaintiff's pro se complaint pursuant to this standard. Id. at 1295-96. Here, the court has a developed record before it, and the officer defendants' failure to immediately call for emergency services does not amount to a constitutional violation. See Moskos, 24 F.4th at 297-98.

Accordingly, taking plaintiff's version of the facts as true, no reasonable jury could find the officer defendants acted with deliberate indifference to a serious medical need. Therefore, the officer defendants are entitled to judgment as a matter of law on plaintiff's deliberate indifference claim.

B. Motion to Strike

In his motion to strike, plaintiff seeks to strike portions of Piland's testimony, arguing that Piland's testimony is factually inaccurate, is not based on personal knowledge, and improperly argues legal conclusions. In the alternative, plaintiff asks the court to disregard Piland's sworn

testimony when ruling on defendant Institutional Medical Services's motion for summary judgment.

Where the court did not rely on of the challenged portion of Piland's affidavit in granting defendant Institutional Medical Services summary judgment, plaintiff's motion to strike is terminated as moot.

## CONCLUSION

Based on the foregoing, defendants' motion for summary judgment (DE 41, 44) are GRANTED. Plaintiff's motion to strike (DE 59) is TERMINATED AS MOOT. The clerk is DIRECTED to close this case.

SO ORDERED, this the 30th day of September, 2026.

LOUISE W. FLANAGAN
United States District Judge